# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

UNITED STATES OF AMERICA

-vs-                                                    Case No. 6:09-cr-110-Orl-28KRS

ROBERT EDWARD PRITT, JR.,
PHILIP KEVIN LYONS

---

## ORDER

This cause came on for consideration without oral argument on the following motions filed

herein:

| | |
|---|---|
| **MOTION:** | **DEFENDANT ROBERT EDWARD PRITT, JR.'S MOTION AND MEMORANDUM TO DISMISS INDICTMENT AND REQUEST FOR HEARING (Doc. No. 90)** |
| **FILED:** | **February 15, 2010** |

| | |
|---|---|
| **MOTION:** | **DEFENDANT ROBERT EDWARD PRITT, JR.'S MOTION AND MEMORANDUM TO STAY TRIAL AND REQUEST FOR HEARING (Doc. No. 91)** |
| **FILED:** | **February 15, 2010** |

## I.    PROCEDURAL HISTORY.

On February 15, 2010, Defendant Robert Edward Pritt, Jr. (Pritt) filed the above-referenced

motions, which motions were adopted by his co-defendant, Philip Kevin Lyons (Lyons).  Doc. Nos.

90, 91, 92.[1] Pritt alleges in the motion to dismiss that the indictment in this case should be dismissed because the 2007 qualified jury wheel, from which the grand jurors who returned the indictment were drawn, was not comprised of a fair cross-section of the community in violation of the Sixth Amendment and the Jury Selection and Service Act of 1968 (JSSA). Doc. No. 90. He alleges in the motion to stay that the 2009 qualified jury wheel, from which petit jurors would be drawn for the trial of this case, also is not comprised of a fair cross-section of the community in violation of the Sixth Amendment and the JSSA. Doc. No. 91. Pritt filed a number of exhibits in support of his motions. Doc. Nos. 93, 99-102. These exhibits include a sworn statement from Randy Fisher, Ph.D., an expert witness in another case previously before the Court. Doc. No. 101-1. Pritt also filed a notice of correction of scrivener's errors in the motions, which has been considered by the Court. Doc. No. 105.

For the reasons set forth herein, the evidence Pritt presented is insufficient to support his requests for relief under the Sixth Amendment. In assessing a Sixth Amendment challenge to a qualified jury wheel, controlling law in this Circuit requires this Court to determine whether the absolute disparity between the percentage of individuals in distinctive groups in the community eligible for jury service and the percentage of such individuals that comprise the 2007 and 2009 qualified jury wheels is more than ten percent. The evidence presented by Pritt shows conclusively that the absolute disparity of Blacks and Hispanics eligible for jury service as compared with those in the 2007 and 2009 qualified jury wheels, considered individually and collectively, is less than ten percent. The recent decision by the United States Supreme Court in *Berghuis v. Smith*, 130 S.Ct. 1382 (2010), does not

---

[1] Defendant Lyons moves in Doc. No. 92 to adopt Defendant Pritt's motions (Doc. Nos. 90, 91). Defendant Lyons' motion is granted. The Court recognizes that the arguments apply equally to Lyons but because Pritt has filed the motions and made the assertions, for ease of reference, the Court will refer to the filings and assertions as those of Pritt.

provide a basis for this Court to ignore the precedential decisions of the United States Court of Appeals for the Eleventh Circuit on the question of whether comparative disparity, rather than absolute disparity, should be used when considering challenges to the fair cross-section of a qualified jury wheel.

Similarly, the evidence Pritt presented is insufficient to support his claim that the Clerk of Court violated the JSSA. Pritt has not presented evidence that the Clerk of Court systematically excluded individuals from the qualified jury wheel or that the voter registration lists on which the Clerk relies to obtain names of individuals from whom the qualified master jury wheels will be populated should have been supplemented simply because of an underrepresentation of an identifiable group.

## II.   STATEMENT OF FACTS.

### A.   The Selection Process for Jurors.

In the Middle District of Florida. Orlando Division. the Court receives voter registration records from the Florida Secretary of State. The records are the voter registration lists as of the close of the general election in even numbered years. Third party vendors load this information into the Court's jury management system. Doc. Nos. 90 at 3; 93 at 21; 99-17 at 2-5; 99-19 at 2-9; 102-10 at 2-10.

The Court then follows the process described in the Plan for the Qualification and Selection of Grand and Petit Juries for the Middle District of Florida ("Jury Plan") to determine the number of jurors needed for the Master Jury Wheel (MJW). The Clerk of Court's office pulls the starting number, then based on the interval selected under the Jury Plan, jurors are selected and this list populates the MJW.[2] Doc. No. 93 at 21-24. Questionnaires are sent to everyone selected. Doc. Nos. 90 at 3; 93 at 22; 99-20 at 2-8. When the questionnaires are returned, they are processed through a Scantron machine which

---

[2] For example, if the starting number is five and the interval is thirty, the clerk will start with juror number five. and pull every thirtieth name after number five. *See* Doc. No. 93 at 22.

extracts information by code for 15 questions. Doc. Nos. 90 at 3; 93 at 22. Every questionnaire is reviewed by a person in the clerk's office. Doc. Nos. 90 at 3-4; 93 at 22-23. If the Scantron machine rejects a questionnaire as unreadable, it is hand-processed back into the system. Doc. No. 93 at 23. The next step is the creation of a qualified list, the Qualified Jury Wheel (QJW), with the Clerk of Court determining disqualification from information provided on the questionnaire. Doc. Nos. 90 at 4; 93 at 23.

B.     Composition of the Jury Wheels.

1.     *The 2003 Jury Wheel.*[3]

According to the Clerk's reports, in 2003, Blacks were 10.9% of the general population, 9.04% of the MJW and 6.53% of the QJW. Doc. Nos. 90 at 6; 99-2 at 3- 5; 99-11 at 2, 4. Hispanics were 10.2% of the general population, 8.57% of the MJW and 5.86% of the QJW. *Id.*

For Blacks, the difference between 9.04% and 6.53% yields an absolute disparity of 2.51%. For Hispanics, the difference between 8.57% and 5.86% yields an absolute disparity of 2.71%. The relative or comparative disparity for Blacks is 27.78% (2.51% divided by 9.04%) and the relative disparity for Hispanics is 31.62% (2.71% divided by 8.57%).[4]

2.     *The 2005 Jury Wheel.*

In 2005, Blacks were 10.4% of the general population, 9.87% of the MJW and 5.92% of the QJW. Doc. Nos. 90 at 6: 99-4 at 3; 99-12 at 2, 4. Hispanics were 10.2% of the general population,

---

[3] The information for the 2003 and 2005 jury wheels is included because Pritt asserts the problems with the jury system have been long-standing.

[4] The comparative disparity is determined by dividing the absolute disparity by the group's representation in the jury-eligible population. *Smith,* 130 S.Ct. at 1389.

-4-

11.1% of the MJW and 7.0% of the QJW. *Id.*

For Blacks, the difference between 9.87% and 5.92% yields an absolute disparity of 3.95%. For Hispanics, the difference between 11.1% and 7.0% yields an absolute disparity of 4.1%. The relative disparity for Blacks is 40.0% (3.95% divided by 9.87%) and the relative disparity for Hispanics is 36.9% (4.1% divided by 11.1%).

     3.    *The 2007 Jury Wheel.*

In 2007, Blacks were 10.4% of the general population, 10.36% of the MJW and 6.44% of the QJW. Doc. Nos. 90 at 6; 99-5 at 3; 99-13 at 2, 4. Hispanics were 10.2% of the general population, 12.35% of the MJW and 8.34% of the QJW. *Id.*

For Blacks, the difference between 10.36% and 6.44% yields an absolute disparity of 3.92%. For Hispanics, the difference between 12.35% and 8.34% yields an absolute disparity of 4.01%. The relative disparity for Blacks is 37.8% (3.92% divided by 10.36%) and the relative disparity for Hispanics is 32.5% (4.01% divided by 12.35%). Doc. No. 90 at 2.

     4.    *The 2009 Jury Wheel.*

In 2009, Blacks were 10.4 % of the general population, 11.44% of the MJW and 6.95% of the QJW. Doc. Nos. 91 at 4-6; 102-2 at 3; 102-6 at 2, 4. Hispanics were 10.2% of the general population, 13.72% of the MJW and 9.51% of the QJW. *Id.*

For Blacks, the difference between 11.44% and 6.95% yields an absolute disparity of 4.49%. For Hispanics, the difference between 13.72% and 9.51% yields an absolute disparity of 4.21%. The relative disparity for Blacks is 39.25% (4.49% divided by 11.44%) and the relative disparity for Hispanics is 30.69% (4.21% divided by 13.72%). Doc. No. 91 at 1, 4-6.

## III. ANALYSIS.

In his motions to dismiss and to stay the case, Pritt alleges that he meets the requirements for fair cross-section claims under the Sixth Amendment and the JSSA. He argues that the comparative or relative disparities should be considered instead of only the absolute disparities. He also argues that systematic exclusion is shown by a lower rate of return for questionnaires among Blacks and Hispanics than Whites. In addition, he argues the Clerk fails to verify addresses on undeliverable questionnaires, fails to follow-up on unreturned questionnaires, and fails to correct incomplete questionnaires. Pritt also argues that the failure to supplement the voter registration lists as the source for jurors shows systematic exclusion and violates the JSSA. Finally, Pritt asserts that the evolution of Eleventh Circuit law is flawed because it confuses discriminatory claims under the Fifth Amendment with Sixth Amendment analysis, which does not require a showing of discrimination.

### A.    JSSA Claim and Systematic Exclusion.

Pritt's primary argument is that use of the voter registration list alone as a source of jurors violates section 1863(b)(2) of the JSSA and underrepresents Blacks and Hispanics due to systematic exclusion in violation of the Sixth Amendment. He also claims that the actions of the Clerk. including failure to verify addresses on undeliverable questionnaires, failing to follow-up on unreturned questionnaires, and failure to correct incomplete questionnaires, also systematically exclude Blacks and Hispanics. Because these claims are related, the Court will address them together.

#### 1.    *JSSA and Sixth Amendment Requirements.*

The JSSA provides that "all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district

or division wherein the court convenes." 28 U.S.C. § 1861. The JSSA establishes the following procedure for claims under its provisions:

> Upon motion . . . containing a sworn statement of facts which, if true, would constitute a substantial failure to comply with the provisions of this title, the moving party shall be entitled to present in support of such motion the testimony of the jury commission or clerk. if available, any relevant records and papers not public or otherwise available used by the jury commissioner or clerk, and any other relevant evidence. If the court determines that there has been a substantial failure to comply with the provisions of this title in selecting the grand jury. the court shall stay the proceedings pending the selection of a grand jury in conformity with this title or dismiss the indictment, whichever is appropriate.

28 U.S.C. § 1867(d). The Act's sworn statement requirement is to be "strictly construed." *United States v. Maldonado*, 849 F.2d 522, 523 (11th Cir. 1988); *see also United States v. Green*, 742 F.2d 609, 612 (11th Cir. 1984) (compliance with statutory requirements is necessary to question the validity of a jury plan).

The JSSA explicitly provides remedies only for a "substantial failure to comply" with its requirements. 28 U.S.C. § 1867(d). A substantial failure occurs under the JSSA when the failure violates one of the following three principles: (1) random selection of juror names; (2) from a fair cross-section of the community: and (3) use of objective criteria for determination of disqualifications, excuses. exemptions, and exclusions. *United States v. Carmichael*, 560 F.3d 1270, 1277 (11th Cir. 2009) (citing *United States v. Gregory*, 730 F.2d 692, 699 (11th Cir. 1984)). The fair cross-section principle is the same as that required by the Sixth Amendment. *Carmichael* at 1278 (citing *United States v. Rodriguez*, 776 F.2d 1509, 1510 n.1 (11th Cir. 1985)).

Section 1863(b)(2) of the JSSA states that jury plans shall "specify whether the names of prospective jurors shall be selected from the voter registration lists or the lists of actual voters" and that the plans "shall prescribe some other source or sources of names in addition to voter lists where

necessary to foster the policy and protect the rights secured by sections 1861 and 1862 of this title."

28 U.S.C. § 1863(b)(2). Sections 1861 and 1862 provide that litigants in federal courts entitled to trial

by jury have the right to juries selected at random from a fair cross section of the community, all

citizens have the opportunity to be considered for service on juries, and that no citizen shall be excluded

from jury service on account of race, color, religion, sex, national origin, or economic status. 28 U.S.C.

§§ 1861, 1862.

Instead of reading section 1863(b)(2) of the JSSA as more demanding than the Sixth

Amendment requirements. or as a different statutory mandate, courts have consistently held that this

provision and the Sixth Amendment "impose essentially the same obligation." and that the statutory

language was drawn from the Supreme Court's constitutional holdings. *In re United States*, 426 F.3d

1, 8 (1st Cir. 2005) (citing *United States v. Royal*, 174 F.3d 1, 10-11 (1st Cir. 1999); *United States v.

Rioux*, 97 F.3d 648. 660 (2d Cir. 1996); *United States v. Allen*, 160 F.3d 1096, 1102 (6th Cir. 1998);

*United States v. Clifford*, 640 F.2d 150. 154-55 (8th Cir. 1981): *United States v. Miller*, 771 F.2d 1219,

1227 (9th Cir. 1985); *United States v. Shinault*, 147 F.3d 1266, 1270-71 (11th Cir. 1998)); *see also

Carmichael*, 560 F.3d at 1278. Accordingly, the Sixth Amendment requirements must be considered

as well.

"The Sixth Amendment guarantees a criminal defendant the right to be indicted and tried by

juries drawn from a fair cross-section of the community." *United States v. Grisham*, 63 F.3d 1074,

1078 (11th Cir. 1995). This requirement of a fair cross-section, however, does not guarantee that juries

be "of any particular composition." or "that petit juries actually chosen must mirror the community."

*Taylor v. Louisiana*. 419 U.S. 522, 538 (1975). All that is required is that "the jury wheels, pools of

names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof." *Id.*

To establish a *prima facie* case for violation of the Sixth Amendment's requirement of a fair cross-section in a jury, a defendant must show: (1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that the underrepresentation is due to systematic exclusion of the group in the jury selection process. *Duren v. Missouri*, 439 U.S. 357, 364 (1979). Failure to establish any element of the *prima facie* case is fatal to a Sixth Amendment challenge to the jury selection process. *United States v. Pepe*, 747 F.2d 632, 649 (11th Cir. 1984).

### 2. *Voter Registration Lists and Other Alleged Systematic Exclusions.*

By statute, voter registration lists are the presumptive source of jury pools. 28 U.S.C. § 1863(b)(2). The statute does allow for another source of names where necessary to meet the JSSA's policies. Interpreting section 1863(b)(2), the Eleventh Circuit has stated, "[t]his vague language, however, does not necessarily require that voter lists be supplemented when they over-or under-represent certain groups." *Carmichael*, 560 F.3d at 1279. The court further stated that "[t]he circuits are 'in complete agreement that neither the Act nor the Constitution require that a supplemental source of names be added to voter lists simply because an identifiable group votes in a proportion lower than the rest of the population.'" *Id.* (quoting *United States v. Orange*, 447 F.3d 792, 800 (10th Cir. 2006) (citing *United States v. Test*, 550 F.2d 577, 587 n.8 (collecting cases)); *see also United States v. Arlt*, 567 F.2d 1295, 1297 (5th Cir.) (per curiam)(citing *United States v. Goff*, 509 F.2d 825 (5th Cir. 1975) ("The use of voter registration lists has been upheld by this Court even if an identifiable group votes

in a proportion lower than the rest of the population."); *Camp v. United States*, 413 F.2d 419, 421 (5th Cir. 1969) (persons who choose not to register to vote do not constitute a distinctive group); *United States v. Sanchez*, 156 F.3d 875, 879 (8th Cir. 1998) ("Ethnic and racial disparities between the general population and jury pools do not by themselves invalidate the use of voter registration lists and cannot establish the 'systematic exclusion' of allegedly under-represented groups."). Pritt's argument that the voter registration lists should be supplemented because the voter registration lists alone undrerrepresent Blacks and Hispanics has thus already been rejected by not just the Eleventh Circuit, but many other circuit courts as well. Neither violation of the JSSA nor systematic exclusion occurs just because a certain group registers to vote in lower proportions than the rest of the population.

Systematic exclusion under the Sixth Amendment is exclusion "inherent in the particular jury-selection process utilized." *Duren*, 439 U.S. at 366. Pritt has not alleged that the Clerk's processes or the use of the voter registration lists are anything but neutral. Where names drawn from a master wheel are randomly drawn, there can be no reasonable inference that there was a systematic exclusion of a distinctive group at any stage, including at the distribution of juror questionnaires. *United States v. Pion*, 25 F.3d 18, 23-24 (1st Cir. 1994). Here, there are no allegations that the process is not executed in a neutral and random manner. Pritt only objects that the neutral process results in the underrepresentation of Blacks and Hispanics. This does not amount to systematic exclusion under the Sixth Amendment.

In a similar case, *United States v. Orange*, the defendant claimed almost exactly the same procedural defects that Pritt alleges here, that systematic exclusion in the jury selection process was evidenced by the following: (1) the clerk's office did not make any effort to update addresses before mailing questionnaires, or any effort to locate those whose questionnaires were returned as

undeliverable, thereby decreasing representation in the more mobile minority population; (2) the minority population was less likely to return the juror questionnaires and the clerk's office takes no further follow-up action; and (3) the voter registration list itself was unrepresentative because minorities were less likely to register to vote than their majority counterparts. 447 F.3d at 799-800. That court stated, "[n]one of these purported causes for under-representation constitute systematic exclusion. Discrepancies resulting from the private choices of potential jurors do not represent the kind of constitutional infirmity contemplated by *Duren*." *Id.* at 800 (citing *Test*, 550 F.2d at 586-87; *Barber v. Ponte*, 772 F.2d 982, 997 (1st Cir. 1985) (en banc); *United States v. Cecil*, 836 F.2d 1431, 1446-47 (4th Cir. 1988)); *see also Rioux*, 97 F.3d at 658 ("The inability to serve juror questionnaires because they were returned as undeliverable is not due to the system itself, but to outside forces, such as demographic changes."). Pritt has not identified anything inherent in the system itself that causes underrepresentation of Blacks and Hispanics. It is rather the private choices of individuals that cause any underrepresentation, and these cannot amount to the systematic exclusion required under the fair cross-section analysis.

Accordingly, Pritt has failed to establish a violation of the JSSA for failure to supplement the voter registration lists. He also cannot support a claim that the underrepresentation of Blacks and Hispanics is due to any systematic exclusion.

B.     Fair Cross-Section Claim.

Pritt asserts that he meets all three prongs of the *Duren* test for stating a fair cross-section claim under the Sixth Amendment. The fair cross-section principle in the JSSA is identical to that required by the Sixth Amendment. *Carmichael*, 560 F.3d at 1278. Thus, they will be analyzed together here.

1.    *Distinctive Group.*

First. Pritt must show that the groups alleged to be excluded are 'distinctive' groups in the community. *Duren*, 439 U.S. at 364. The first prong is not at issue in this case, as the parties agree that Blacks and Hispanics are distinctive groups under *Duren*. Doc. No. 113 at 4; *see also Carmichael*, 560 F.3d at 1280 ("African-Americans represent a distinctive group in the community."); *Rioux*, 97 F.3d at 654 ("Blacks and Hispanics are unquestionably 'distinctive' groups for the purposes of a fair-cross-section analysis.").[5]

2.    *Unfair or Unreasonable Representation.*

Second, to establish a fair cross-section claim, Pritt must show that the representation of the distinctive groups in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community. *Duren*, 439 U.S. at 364. Although precise mathematical standards are not possible, the Eleventh Circuit has consistently found that a *prima facie* case of underrepresentation has not been made where the absolute disparity between the percentage of the distinctive group on the qualified jury wheel and the percentage of the group among the population eligible for jury service does not exceed ten percent. *United States v. Tuttle*, 729 F.2d 1325, 1327 (11th Cir. 1984); *United States v. Butler*, 611 F.2d 1066, 1069-70 (5th Cir. 1980); *United States v. Maskeny*, 609 F.2d 183, 190 (5th Cir. 1980). "Under black letter Eleventh Circuit precedent, '[i]f the absolute disparity between these two percentages is ten percent or less, the second element is not satisfied[.]'" *Carmichael*, 560 F.3d at 1280 (quoting *Grisham*, 63 F.3d at 1078-79 (parenthetical added)); *see also*

---

[5] The Court notes that both Pritt and Lyons are Caucasian. However, a defendant is not required to be a member of the distinctive group which he claims was underrepresented. *See Taylor v. Louisiana*, 419 U.S. 522, 526 (1974).

*United States v. Clarke*, 562 F.3d 1158, 1163 (11th Cir. 2009) (restating that the second prong of *Duren* required an absolute disparity of at least ten percent). Pritt bears the burden of showing a lack of fair and reasonable representation. *Carmichael*, 560 F.3d at 1281.

Counsel for Pritt admit that the Eleventh Circuit requires a ten percent absolute disparity to show unfair or unreasonable representation of a distinctive group. Doc. No. 90 at 2 ("Counsel recognizes that the current law in this circuit requires an absolute disparity of at least 10% to make a showing that the Sixth Amendment requirement of a fair cross section has been violated."); Doc. No. 91 at 2 ("The defendant acknowledges that the current law in the Eleventh Circuit holds that no Sixth Amendment violation occurs unless the actual disparity exceeds 10%."). In this case, for Blacks, from 2003 through 2009, the absolute disparity has ranged between a low of 2.51% and a high of 4.49%. Accordingly, the absolute disparity for Blacks fails to satisfy the second prong of *Duren*. For Hispanics, from 2003 to 2009, the absolute disparity has ranged between a low of 2.71% and a high of 4.21%. Thus, the absolute disparity for Hispanics also fails to satisfy the second prong of *Duren*. Even if the highest absolute disparities are added together, as Pritt summarily suggests in his Motion to Stay, Doc. No. 91 at 2. Pritt cannot reach an absolute disparity greater than ten percent. Accordingly, Pritt cannot meet the "black letter" law test for establishing a prima facie case of violation of the fair cross-section requirement of the Sixth Amendment and the JSSA. *Carmichael*, 560 F.3d at 1280. Under clearly established precedent, Pritt's challenge under both the JSSA and Sixth Amendment fails.

3.    *Systematic Exclusion.*

Pritt fails to meet the third prong of the *Duren* test as well. As discussed previously, Pritt's assertions regarding the use of voter registration lists and inaction of the Clerk's office regarding unanswered, returned or incomplete juror questionnaires does not amount to systematic exclusion under

*Duren.* Accordingly, Pritt has failed to establish two out of three requirements for stating a *prima facie* case, and his claim that the jury system does not produce a fair cross-section of the community fails.

C.  Changing the Law.

Pritt urges that the current law requiring an absolute disparity of ten percent is "flawed" and "not well founded." Doc. Nos. 90 at 2; 91 at 2. Pritt thus argues that the law should not be followed in his case.

Pritt argues that the ten percent absolute disparity requirement applies to equal protection violations but not to Sixth Amendment violations, and that the Fifth Circuit[6] erred in applying equal protection standards to Sixth Amendment claims, an error which began in *United States v. Maskeny*, 609 F.2d 183 (5th Cir. 1980), and has been perpetuated by the courts ever since. In *Maskeny*, the Fifth Circuit noted that in *Swain v. Alabama*, 380 U.S. 202, 208-09 (1965), the Supreme Court held that underrepresentation by as much as ten percent did not show purposeful discrimination based on race, as required for an equal protection challenge. *Id.* The Fifth Circuit explicitly recognized that *Swain* was an equal protection case where a showing of purposeful discrimination was required and that in *Duren,* a Sixth Amendment case, a defendant did not have to show discriminatory intent. *Id.* The Fifth Circuit noted that in *Duren*, the Supreme Court had stated that statistical evidence would be used to prove different elements in equal protection and Sixth Amendment claims, but the Supreme Court in *Duren* "did not indicate that the necessary amount of disparity itself would differ." *Id.* Accordingly, the Fifth Circuit and then the Eleventh Circuit have not applied the equal protection disparity analysis

---

[6] All decisions of the Fifth Circuit prior to October 1, 1981 are binding precedent on this Court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

to the area of Sixth Amendment challenges unthinkingly, but have articulated a well-reasoned basis for the use of the same statistical analysis in equal protection challenges as in Sixth Amendment challenges.

The Eleventh Circuit has further explained the similarities and differences between an equal protection challenge and a Sixth Amendment challenge. In *United States v. Tuttle*, the Eleventh Circuit explained that a *prima facie* case under the equal protection clause was "virtually identical" to that under the Sixth Amendment, and that the court had treated the threshold disparities required under both types of challenge as the same. 729 F.2d at 1327 n.2 (citing *Machetti v. Linahan*, 679 F.2d 236, 241 n.6 (11th Cir. 1982)). "The two analyses differ, however, in the way the prima facie case is rebutted." *Gibson v. Zant*, 705 F.2d 1543, 1546 n.4 (11th Cir. 1983)(comparing *Castaneda v. Partida*, 430 U.S. 482, 497-98 (1977) (*prima facie* case under equal protection rebutted by proving absence of discriminatory intent) with *Duren*, 439 U.S. at 367-68 (*prima facie* case under Sixth Amendment rebutted by proving significant governmental interest justifying the imbalance of classes)). Accordingly, the Circuit Court has not blindly adhered to the mistake Pritt alleges occurred in *Maskeny*, but has thoroughly examined the similarities and differences between equal protection challenges and Sixth Amendment challenges and has resolved those questions.

Because he cannot establish greater than ten percent absolute disparity, Pritt urges the court to consider the comparative or relative disparity instead, and offers the sworn statement of Dr. Fisher in support of this contention. Comparative disparity "measures the diminished likelihood that members of an under-represented group, when compared to the population as a whole, will be called for jury service." *Ramseur v. Beyer*, 983 F.2d 1215, 1231-32 (3d Cir. 1992). However, the Eleventh Circuit has clearly established that the absolute disparity test should be used, especially when dealing with

smaller percentages because the relative disparity "may distort the significance of the deviation." *Pepe*, 747 F.2d at 649 n.18.

Even if the Court went outside of the Eleventh Circuit's ten percent absolute disparity requirement and examined the comparative disparities, Pritt would still fail to meet the second prong of *Duren*. For Blacks, the comparative disparity ranged between a low of 27.77% and a high of 40.0% in the years between 2003 and 2009. For Hispanics, the comparative disparity ranged between a low of 30.69% and a high of 36.9% in the years of 2003 through 2009. In *Pepe*, the Eleventh Circuit rejected a defendant's assertion that his Sixth Amendment right to a jury representing a fair cross-section of the community was violated where the absolute disparity was 7.6% and the relative disparity was 67.3%. *Id.* at 649 and n.18. The Court notes that both of these disparities are larger than the disparities in the present case. Similarly, other courts have found that comparative disparities larger than those in this case fail to establish a *prima facie* case under the second prong of *Duren*. *See, e.g., Orange*, 447 F.3d at 798-99 (comparative disparities between 38.17% and 51.22% did not state a *prima facie* case under *Duren*); *United States v. Chanthadara*, 230 F.3d 1237, 1257 (10th Cir. 2000) (comparative disparities of 40.89% and 58.39% did not state a *prima facie* case under *Duren*); *Shinault*, 147 F.3d at 1273 (comparative disparities between 48.63% and 59.84% did not state a prima facie case under *Duren*); *Royal*, 174 F.3d at 10 and n.10 (comparative disparity of 60.9% did not state a *prima facie* case under *Duren*). Thus, even if this Court adopted the use of comparative disparities, which it does not, Pritt's challenge based on these disparities would still fail.

To the extent that Pritt asks this Court to overrule the ten percent absolute disparity requirement, this Court is without the power to do so. *See Johnson v. DeSoto County Bd. of Comm'rs*, 72 F.3d 1556, 1559 n.2 (11th Cir. 1996) (district court has no discretion to depart from a higher court's

ruling if the higher court has already decided the issue before the court); *Grisham*, 63 F.3d at 1079 n.4

(citing *United States v. Machado*, 804 F.2d 1537, 1543 (11th Cir. 1986) (only the Supreme Court or

the Eleventh Circuit sitting *en banc* can overrule the decision of a prior panel)). To the extent that the

absolute disparity mode of analysis is open to criticism, this criticism is not new to the Eleventh

Circuit. That court has encountered, considered, and ruled definitively on that issue previously. *See*

*Carmichael*, 560 F.3d at 1280; *Pepe*, 747 F.2d at 649 n.18; *Maskeny*, 609 F.2d at 190. To the extent

Pritt argues that supplementation of the voter registration lists could improve the disparities within the

system or that use of the voter registration list causes underrepresentation of some groups, this

argument is also not new to the Eleventh Circuit. *See Carmichael*, 560 F.3d at 1279; *Pepe*, 747 F.2d

at 649; *Maskeny*, 609 F.2d at 191-92; *Camp*, 413 F.2d at 421.

Pritt argues that the recent Supreme Court case *Berghuis v. Smith*, 130 S.Ct. 1382 (2010),

provides a basis for questioning prior Eleventh Circuit precedent regarding the ten percent absolute

disparity threshold. In *Smith*, the Supreme Court stated that its prior decisions did not specify "the

method or test courts must use to measure the representation of distinctive groups in jury pools." *Id.*

at 1393. The Supreme Court noted that both absolute and comparative disparity measurements could

be misleading where the distinctive group composed only a small percentage of those eligible for jury

service. *Id.* The Supreme Court stated, "[W]e would have no cause to take sides today on the method

or methods by which underrepresentation is appropriately measured." *Id.* at 1393-94. In fact, the

Supreme Court explicitly declined to address the ten percent absolute disparity requirement for stating

a *prima facie* case. *Id.* at 1394 n.4. The Supreme Court in *Smith* neither endorsed any particular test

nor determined any particular test was inappropriate. Thus, nothing in the *Smith* decision provides any

support for a wholesale departure from the well-established law in the Eleventh Circuit regarding the requirements for a fair cross-section claim.

In *Smith*, the Supreme Court also discussed what was required to establish systematic exclusion. The defendant in *Smith* objected to the practices of excusing people who merely alleged hardship or simply failed to show up for jury service, relying on mail notices, failing to follow-up on nonresponses, using residential addresses at least 15 months old, and police refusing to enforce court orders for the appearance of prospective jurors. *Id.* at 1395. The Supreme Court stated that no clearly established precedent of the Court supported the claim that a *prima facie* claim could be established "merely by pointing to a host of factors that, individually or in combination *might* contribute to a group's underrepresentation." *Id.* (emphasis in original). The Supreme Court further stated that it had never clearly established "that jury-selection-process features of the kind on Smith's list can give rise to a fair-cross-section claim." *Id.* This pronouncement bolsters the earlier determination that Pritt's similar allegations failed to establish that any underrepresentation of Blacks and Hispanics is due to systematic exclusion. In short, none of Pritt's arguments for ignoring well-established Eleventh Circuit precedent are well-taken.

D.    Request for Hearing.

Pritt requests a hearing on his motions to dismiss and to stay under 28 U.S.C. § 1867(d). That statute requires a "sworn statement of facts which, if true, would constitute a substantial failure to comply with the provisions of this title" before any entitlement to a hearing arises. As described in detail above, even if all of Pritt's factual assertions are accepted as true, Pritt's allegations fail to establish a substantial failure to comply with the JSSA. Accordingly, he does not meet the requirements of 28 U.S.C. § 1867(d), and no hearing on Pritt's claim is necessary.

## IV.   CONCLUSION.

Because Pritt and Lyons have failed to establish a *prima facie* case of a Sixth Amendment violation and have failed to show that the Middle District of Florida has substantially failed to comply with the JSSA, the motions to dismiss and to stay, Doc. Nos. 90 and 91, are hereby **DENIED**. Based on the Court's analysis and decision herein, Defendant Pritt's Motion for Discovery Relating to Defendant's Jury Challenges and Request for Hearing (Doc. No. 124) is denied as moot.

**DONE** and **ORDERED** in Orlando, Florida on this ___8___ day of June, 2010.

JOHN ANTOON II
UNITED STATES DISTRICT JUDGE

Copies furnished to:

United States Marshal
United States Attorney
United States Probation Office
United States Pretrial Services Office
Counsel for Defendant